No. 46,578

CHARLES L. PIERSON, *Appellee,* v. STATE OF KANSAS, *Appellant.*

(502 P. 2d 721)

Opinion filed November 4, 1972.

*James A. Wheeler,* County Attorney, argued the cause, and *Vern Miller,* Attorney General, and *David H. Zook,* Assistant County Attorney, were with him on the brief for the appellant.

*Joseph Anderson,* of Mission, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an appeal by the state in a post-conviction proceeding filed pursuant to K. S. A. 60-1507. With the exception of a very narrow area the facts are not greatly in dispute and are substantially as follows: On August 9, 1964, an armed robbery took place in the home of Ralph Pellow, Overland Park, Kansas. The robber took by force from Mr. Pellow a valuable coin collection, articles of clothing, various items of jewelry and Pellow's identification holder which contained various credit cards and the titles to two automobiles. On September 18, 1964, the appellee, Charles L. Pierson, was arrested in California and certain items from the Pellow home were recovered from his apartment. The

county attorney of Johnson County, Kansas, was so advised and on October 7, 1964, he filed a complaint in the Johnson County Magistrate Court charging Pierson with the armed robbery of Ralph Pellow. On October 8, 1964, a warrant was issued for Pierson's arrest. Pierson was convicted and served time on a charge in California. He remained in prison there until March 4, 1966, at which time he was returned to the Kansas State Penitentiary for a parole violation. On March 9, 1966, William R. Barker, Chief of Records at the Kansas State Penitentiary, received a letter from the sheriff of Johnson County requesting that a detainer be placed against Pierson on the warrant for the Pellow robbery. Mr. Barker sent an acknowledgment of receipt of the detainer to the sheriff of Johnson County. It should be noted that at all times thereafter the presence of Pierson in the Kansas State Penitentiary was known to the sheriff of Johnson County. On the same day Barker prepared for Pierson a request for disposition of detainer form in compliance with the Uniform Mandatory Disposition of Detainers Act, K. S. A. 62-2901 *et seq.* On March 9, 1966, the appellee Pierson was confined in the Segregation and Isolation Building at the penitentiary. On that day Mr. Barker personally took the request for disposition of detainer to the Segregation and Isolation Building where it was signed by Pierson whose signature was verified by Barker. It should be noted that the request for disposition of detainer form is prepared and furnished by the Kansas penal authorities.

At the K. S. A. 60-1507 hearing William R. Barker testified as to what was done with the signed request forms and what steps he took to comply with the Uniform Mandatory Disposition of Detainers Act. Barker testified in substance that four copies of the request for disposition of detainer form were signed by Pierson. The routine procedure is for one signed copy to be retained by the prisoner, one copy to be placed in the prisoner's penitentiary file, one copy to be mailed to the county attorney and one copy to be mailed to the clerk of the particular county court where the prosecution is pending and from which the warrant for arrest and detainer were originally issued. Barker testified that his usual practice was without delay to address envelopes to the county attorney and to the clerk of the appropriate court and to place therein the copy of the request for disposition of the detainer and to mail them by registered mail, return receipt requested. Barker

testified that he was certain he followed the usual procedure in this case.

Pierson heard nothing further about the matter until December of 1966 when Myron Scafe, a police officer of the Overland Park Police Department, came to visit Pierson at the penitentiary. At the 60-1507 hearing Pierson testified that Scafe interviewed him about the Pellow robbery in order to obtain information so that items of Mr. Pellow's property might be recovered. Pierson testified that *Mr. Scafe mentioned the fact that Pierson had filed a mandatory detainer form and made some comment that they could not try him now.* This testimony indicated that the Overland Park Police Department had some knowledge that the Uniform Mandatory Disposition of Detainers Act had been invoked by Pierson at some time prior to December of 1966. Nothing happened after that until June 2, 1967, at which time Pierson was discharged from the sentence he was then serving at the Kansas State Penitentiary and was arrested by the sheriff of Johnson County on the Pellow armed robbery warrant which had been issued on October 8, 1964. Pierson was taken to Johnson County for trial on the Pellow armed robbery charge.

On September 7, 1967, Pierson was arraigned before the district court of Johnson County. He stood mute. The district judge entered a plea of not guilty for Pierson. On September 11, 1967, the armed robbery charge came on for trial. The record discloses that Pierson's counsel moved that the case be dismissed on the ground that he had been denied a speedy trial under K. S. A. 62-1301 and also K. S. A. 62-1431. The then county attorney called the court's attention to the Uniform Mandatory Disposition of Detainers Act and stated that K. S. A. 62-1301 and 62-1431 were not applicable to a prisoner confined in a Kansas penal institution. Pierson did not specifically mention the Uniform Mandatory Disposition of Detainers Act. The court overruled the motion to dismiss; whereupon Pierson's counsel moved for a continuance of the trial which motion was denied. The case went to trial and on September 12, 1967, Pierson was convicted of robbery in the first degree. He was sentenced to a term of 40 to 60 years in the state penitentiary. A direct appeal was taken to this court. Pierson's conviction was affirmed December 7, 1968, in *State v. Pierson*, 202 Kan. 297, 448 P. 2d 30. Denial of speedy trial was not raised as an issue on that appeal.

On September 30, 1970, Pierson filed this K. S. A. 60-1507 proceeding in the Johnson County district court. The basis of the proceeding was that Pierson had been denied a speedy trial under the Uniform Mandatory Disposition of Detainers Act, K. S. A. 62-2901 *et seq*. He contended that he had fully complied with the requirements of that act and that the Johnson County district court was without jurisdiction to try him on the Pellow charge. On December 18, 1970, a full evidentiary hearing was held on Pierson's 60-1507 petition. The appellee Pierson, William R. Barker and Myron Scafe of the Overland Park Police Department testified. In addition stipulations of fact were made by the parties. At the conclusion of the hearing the case was taken under advisement by the court. On April 8, 1971, the district court sustained Pierson's motion to vacate his conviction and sentence. It was ordered that Pierson be released and discharged from his conviction of armed robbery and the sentence imposed. The state has prosecuted a timely appeal to this court.

Before taking up the specific points which the state raises on this appeal it would be helpful to examine the applicable sections of the Uniform Mandatory Disposition of Detainers Act and the decisions of this court construing the same. We are concerned in this case particularly with K. S. A. 62-2901, 62-2902 and 62-2903. These specific statutes were repealed when we adopted the new Kansas Code of Criminal Procedure and were reenacted with minor changes in wording as K. S. A. 1971 Supp. 22-4301, 22-4302 and 22-4303. Specifically these statutory provisions are as follows:

"62-2901. Request for final disposition of detainer by prisoner; duties of official custodian; dismissal, when. (*a*) Any person who is imprisoned in a penal or correctional institution of this state may request final disposition of any untried indictment, information or complaint pending against him in this state. The request shall be in writing addressed to the court in which the indictment, information or complaint is pending and to the county attorney charged with the duty of prosecuting it, and shall set forth the place of imprisonment.

"(*b*) The warden, superintendent or other official having custody of prisoners shall promptly inform each prisoner in writing of the source and nature of any untried indictment, information or complaint against him of which the warden, superintendent or other official has knowledge or notice, and of his right to make a request for final disposition thereof.

"(*c*) Failure of the warden, superintendent or other official to inform a prisoner, as required by this section, within one (1) year after a detainer has been filed at the institution shall entitle him to a final dismissal of the indictment, information or complaint with prejudice.

"62-2902. Delivery of request to custodian; officials' duties. The request shall be delivered to the warden, superintendent or other officials having custody of the prisoner, who shall forthwith:

"(1) Certify the term of commitment under which the prisoner is being held, the time already served on the sentence, the time remaining to be served, the good time earned, the time of parole eligibility of the prisoner, and any decisions of the state board of probation and parole relating to the prisoner; and

"(2) send by registered or certified mail, return receipt requested, one copy of the request and certificate to the court and one copy to the county attorney to whom it is addressed.

"62-2903. Trial within 180 days after receipt of request and certification, exceptions; dismissal, when. Within one hundred eighty (180) days after the receipt of the request and certificate by the court and county attorney or within such additional time as the court for good cause shown in open court may grant, the prisoner or his counsel being present, the indictment, information or complaint shall be brought to trial; but the parties may stipulate for a continuance or a continuance may be granted on notice to the attorney of record and opportunity for him to be heard. If, after such a request, the indictment, information or complaint is not brought to trial within that period, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment, information or complaint be of any further force or effect, and the court shall dismiss it with prejudice."

Since the adoption of the act in 1959 this court has handed down a number of interpretative decisions. In *State v. Goetz*, 187 Kan. 117, 353 P. 2d 816, we held that the granting of a speedy trial by section 10 of our Bill of Rights as defined by K. S. A. 62-2901 is not a grant of a mere privilege. It is the grant to an accused person of a right of which he canot be deprived by the laches of public officials. In *Goetz* we also held that the right to a speedy trial is a personal right which may be waived, and is waived, if the accused fails to assert his right. In *Goetz* a warrant for Goetz' arrest was issued on September 2, 1958. On September 5, 1958, Goetz was committed to the Kansas state penitentiary on an offense committed in another county. In the same month Finney County authorities filed a detainer with the prison authorities. On three different occasions Goetz made a written demand on the county attorney of Finney County for a speedy trial. On July 9, 1959, Goetz caused a request for disposition of detainer to be sent to the judge of the county court and the county attorney of Finney County pursuant to the recently enacted Uniform Mandatory Disposition of Detainers Act. On September 10, 1959, Goetz was returned to Finney County. He was given a preliminary hearing on September 16, 1959, and was bound over for trial to the district court. Counsel was appointed for Goetz and on November 6 appointed counsel filed a motion for discharge on the grounds that Goetz had not been

given a speedy trial. The motion was overruled; Goetz was returned to Finney County on January 9, 1960. At the trial he renewed his motion for discharge on the ground that he had not been afforded a speedy trial under the Uniform Mandatory Disposition of Detainers Act. The motion was overruled. Then the county attorney dismissed the first count of the information and Goetz pled guilty to the second count. This fact is important on the issue of waiver which has been raised by the state in the case at bar. The defendant then filed a motion for a new trial questioning the jurisdiction of the court. This motion was overruled and Goetz was sentenced to confinement in the penitentiary. On appeal this court reversed, holding that since Goetz had complied with the uniform act, the trial court lacked jurisdiction to accept Goetz' plea of guilty. The important point to note is that where there has been a compliance by the prisoner with the requirements of the Uniform Mandatory Disposition of Detainers Act and no good cause is shown for the lapse of more than 180 days without trial, the courts of Kansas no longer have jurisdiction to proceed with the prosecution. It is a matter of loss of jurisdiction.

In *Brimer v. State*, 195 Kan. 107, 402 P. 2d 789, we held that a prisoner must comply with all of the provisions of the uniform act in order to obtain rights under the act. In *Brimer* the prisoner addressed his request to the wrong court—to the district court instead of to the city court. His request for disposition was, however, promptly sent to the county attorney. Since Brimer had failed to comply with the statute's mandatory requirements, we held that he could not avail himself of his rights under the act.

In *State v. Morton*, 200 Kan. 259, 436 P. 2d 382, it was held that the Uniform Mandatory Disposition of Detainers Act, K. S. A. 62-2901 *et seq.*, applies only when imprisonment is in a penal or correctional institution of this state and has no application when the imprisonment is by some jurisdiction other than the State of Kansas.

Again in *State v. Brooks*, 206 Kan. 418, 479 P. 2d 893, and in *Thomas v. State*, 206 Kan. 529, 479 P. 2d 897, we held that in order to avail himself of rights afforded by the uniform act, it is incumbent upon an accused incarcerated in a penal institution in this state to bring himself squarely under the statute and to comply with its provisions, including the preparation of his written request for disposition of detainer to be addressed to the appropriate court and county attorney.

In *State v. Ellis*, 208 Kan. 59, 490 P. 2d 364, we held that since the Uniform Mandatory Disposition of Detainers Act was applicable, the failure of the warden or other officers having custody of Ellis to notify the prisoner of a pending information charging escape in the district court of Leavenworth County within one year after a detainer had been filed, entitled Ellis to dismissal of the information pending against him with prejudice. We noted in *Ellis* that the fact that the prisoner may have been aware of the pendency of the criminal action in the Leavenworth District Court and the fact that he may have been aware of his rights under the act did not excuse compliance by the prison officials with the clear and mandatory provisions of the statute. The essence of the decision is that the rights of a prisoner could not be prejudiced by failure of the prison officials to carry out their clear and mandatory duties required by the uniform act. We followed *Ellis* in *State v. Norris*, 210 Kan. 457, 502 P. 2d 817.

With the Uniform Mandatory Disposition of Detainers Act and the interpretative decisions just discussed in mind we will now turn to the issues before us on appeal in the case at bar.

It is undisputed that on March 9, 1966, the appellee Pierson was a prisoner at the Kansas State Penitentiary and that on that date William R. Barker as records clerk of the penitentiary received a detainer and an arrest warrant from the case pending in Johnson County charging Pierson with armed robbery. The evidence is undisputed that Pierson signed a request in writing for final disposition of the detainer addressed to the appropriate court and county attorney on a form provided him by the penal officials. The evidence is undisputed that four copies of the request for disposition of detainer were signed by Pierson. One copy was retained by Pierson and three copies were delivered to Barker. One of these copies was placed in Pierson's file in the records office of the penitentiary. The whereabouts of the other two copies is unknown. It is obvious that at this point the prisoner Pierson had fully performed all the acts required of him by the uniform act. From this point on K. S. A. 62-2902 placed the burden upon the warden, superintendent, or other officials having custody of the prisoner to forthwith certify certain information about the prisoner and to mail it along with the request for disposition by registered or certified mail to the appropriate court and county attorney. We wish to emphasize that we do not have before us on this appeal the issue

as to whether or not the rights of a prisoner are to be denied under the uniform act where properly completed forms of request for disposition of detainer are received from the prisoner by the prison officials and are negligently misdirected or not sent at all to the court or county attorney of the county where the case is pending.

On this appeal the state as appellant raises a number of points as a basis of claimed error in the court below. We will consider each point separately. The appellant contends that appellee waived his right to assert a denial of a speedy trial under K. S. A. 62-2901 *et seq.* because he failed to raise the issue at the time he was tried and convicted of robbery in September of 1967, and further because he failed to raise that issue on the direct appeal in that case. The record shows clearly that prior to the trial in the armed robbery case Pierson moved for dismissal of the case on the basis that he had been denied a speedy trial. He specifically referred to K. S. A. 62-1301 and K. S. A. 62-1431 rather than K. S. A. 62-2901 *et seq.* Nevertheless we think it clear that under the rule adopted in *State v. Goetz,* supra, where a proper demand is made by a prisoner for speedy trial under the provisions of the Uniform Mandatory Disposition of Detainers Act and there is failure on the part of the state to comply with that act by bringing the prisoner to trial within the statutory period, no court of Kansas has jurisdiction to try the case and the court is required to dismiss it with prejudice. The provisions of K. S. A. 62-2903 require this result. Hence, it follows that if appellee Pierson complied with all the requirements of the uniform act and the state failed to try him within the statutory time allowed, the failure to raise the issue at the time of the trial or on his direct appeal would not constitute a waiver of his rights under the act.

The state next contends that the trial court erred in failing to take judicial notice of the files and records in the magistrate court case No. 13,371 and in district court case No. 54,578 involving the criminal case where Pierson was charged and convicted of armed robbery. We hold that this point is without merit since it was stipulated by the parties that these files do not contain any record reflecting that either of those courts or the Johnson County attorney's office had received a copy of Pierson's request for disposition of detainer or any indication of such request. The state made no attempt to introduce the files into evidence and pointed out nothing contained in the files of any further probative value on the issues in this case. Under the circumstances we find no error on this point.

The state's main points on this appeal involve the sufficiency of the evidence to support the findings of the trial court that the magistrate court and county attorney of Johnson County received the request for disposition of detainer signed by Pierson and the certificate prepared by Barker so as to require the state to bring Pierson to trial within the 180 day period. William R. Barker in his testimony at the 60-1507 evidentiary hearing testified as to his receiving three copies of the request for disposition of detainer signed by the appellee Pierson. He testified that his usual procedure immediately upon getting them signed was to address two envelopes to the proper court and county attorney then to mail the envelopes by certified or registered mail. He felt that his usual procedure was followed in this case and he was sure that the letters were mailed here. It can not be denied that there was a genuine issue of fact in this case as to whether or not the request of disposition of detainer signed by Pierson and the certificate prepared by Mr. Barker were mailed and received by the magistrate court and county attorney of Johnson County. There was nothing in the files of the clerk of the magistrate court or in the file of the clerk of the district court to show that they had been received by those officials. The county attorney offered no evidence whatsoever to the effect that his office had not received copies of the request and the certificate. The evidence did disclose however that the two copies of the request signed by the prisoner Pierson which normally would have been sent to the appropriate court and the county attorney could not be located anywhere in the files of the penitentiary. An issue was also raised as to failure of Barker as records clerk to produce the return receipts showing service of the request of disposition for detainer and the certificate by registered mail. According to Barker's testimony these return receipts may well have been lost when the mailroom was flooded by water from broken water pipes a year or so prior to Barker's testimony. In his own mind Barker felt that the registered receipts had been prepared and transmitted. After reading the entire record in this case we have concluded that the findings of the trial court that Pierson's request for disposition of the detainer had been received by the magistrate court and county attorney were supported by substantial competent evidence. We have considered the other points raised by the State and find them to be without merit.

The record shows that the appellee Pierson complied with all of

the requirements of the Uniform Mandatory Disposition of Detainers Act and he is entitled to the protection of the same. Since he was not afforded a trial within the time required by that act, we find that the trial court did not commit error in vacating the appellee Pierson's conviction and sentence and in ordering that he be released and discharged therefrom.

The judgment is affirmed.